**Julian VILLASENOR, Plaintiff,**

v.

**INDUSTRIAL WIRE & CABLE, INC., and Carl Calabrese, Defendants.**

**No. 95 C 7432.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 13, 1996.

Manuel R. Ribbeck, Ribbeck Maravi, P.C., Chicago, IL, for plaintiff.

Adrianne Clarise Mazura, Holly Ann Hirst, Rudnick & Wolfe, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Julian Villasenor brings this two-count complaint against Industrial Wire & Cable Corporation ("Wire & Cable")[1] and its Vice President Carl Calabrese, alleging a

---

1. The defendant was mistakenly named "Industrial Wire & Cable, Inc." in the caption of the complaint.

violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and state tort law. Presently before this court is the defendants' motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted.

## I. Background

According to the complaint Villasenor has poliomyelitis, a viral disease of the central nervous system, and is an individual with a "disability" under the ADA, 42 U.S.C. § 12102(2). Compl. ¶ 3. Wire & Cable employed Villasenor, without any special accommodation, from November 1993 until his termination in April 1994. Compl. ¶ 10; Calabrese 1/22/96 Aff. ¶ 4. The plaintiff contends that during his employment with Wire & Cable the company engaged in unspecified "unlawful employment practices," and terminated him in April 1994 because of his disability. Compl. ¶ 9. In addition, he alleges that Calabrese "discriminated, assaulted and insulted" him, and "engaged in outrageous conduct of taunting, annoying and otherwise verbally abusing the plaintiff." Id. ¶ 14. Because of this alleged misconduct, Plaintiff contends, he suffered severe emotional distress. Id. ¶ 15, 17.

Plaintiff subsequently filed a charge of disability discrimination with the Equal Employment Opportunity Commission, and was issued a right to sue letter on September 30, 1995. Compl. ¶¶ 7–8. He filed the instant action in December 1995, alleging that the defendants discriminated against him in violation of the ADA (Count I) and intentionally inflicted emotional distress upon him (Count II).[2] The defendants now raise several arguments in support of dismissal, although we need only address their contention that Wire & Cable did not employ a sufficient number of persons to be considered an "employer" under the ADA.

## II. Standard for Reviewing Motions to Dismiss Under Rule 12(b)(1)

Rule 12(b)(1) motions to dismiss are premised on either facial attacks or factual attacks to jurisdiction. "A facial attack is a challenge to the sufficiency of the pleading itself.... A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." United States v. Ritchie, 15 F.3d 592, 598 (6th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). When reviewing a motion raising a facial attack to jurisdiction, we must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir.1995). However, when presented with a factual attack to jurisdiction, we "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Id. (quoting Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir.1993)).[3]

In answering a properly supported Rule 12(b)(1) factual attack, a plaintiff cannot simply rest on the allegations in the pleadings. Rittmeyer v. Advance Bancorp, Inc., 868 F.Supp. 1017, 1021 (N.D.Ill.1994). Rather, because the party invoking jurisdiction bears the burden of establishing its requirements, Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), the plaintiff must come forward with "competent proof" supporting its jurisdictional allegations, NLFC, Inc. v. Devcom Mid–America, Inc., 45 F.3d 231, 237 (7th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); see Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir.1987); Rittmeyer, 868 F.Supp. at 1021. In other words, the plaintiff must prove to the court by "a preponderance of the evidence or 'proof to a reasonable

---

2. While the complaint does not specify the legal theory underlying Count II, in briefing the instant motion the parties have discussed Count II as a claim for intentional infliction of emotional distress. Therefore, we do the same.

3. An exception to this rule, not applicable here, exists when the facts required to establish jurisdiction are coextensive with those necessary to prevail on the merits. Peckmann v. Thompson, 966 F.2d 295, 297 (7th Cir.1992).

probability that jurisdiction exists.'" *NLFC,* 45 F.3d at 237 (quoting *Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993)).

## III. Discussion

Wire & Cable, the only defendant implicated in the ADA claim raised in Count I, argues that it does not fit into the ADA's definition of an employer:

> [A]n employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.

42 U.S.C. § 12111(5).[4] Therefore, Wire & Cable maintains, we should dismiss Count I because we are without jurisdiction to hear it, and we should decline to exercise our supplemental jurisdiction over Count II.

▮ It is a jurisdictional prerequisite to Villasenor's ADA claim that Wire & Cable be an "employer" under the statute. *E.E.O.C. v. Chemtech Int'l Corp.,* 890 F.Supp. 623, 625 (S.D.Tex.1995); *Doe v. William Shapiro, Esq.,* 852 F.Supp. 1246, 1249 (E.D.Pa.1994); *see Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 579 (7th Cir.1993) (construing employer status as jurisdictional under ADEA). In this case the plaintiff was terminated in 1994, and therefore the relevant calendar years for our consideration are 1993 and 1994.[5] Thus, Wire & Cable must have employed at least twenty-five workers for twenty or more weeks during the calendar years of either 1993 or 1994 in order to be considered an "employer" under the ADA.

Our inquiry is hampered somewhat by the United States Supreme Court's grant of a writ of certiorari in *E.E.O.C. v. Metropolitan Educ. Enters., Inc.,* 60 F.3d 1225 (7th Cir. 1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 1260, 134 L.Ed.2d 209 (1996). In *Metropolitan* the Seventh Circuit reaffirmed its position that hourly and part-time employees who were not at the workplace or on paid leave for each day of a work week could not be counted as "employees" under Title VII. 60 F.3d at 1228–30. This view conflicts with that of the First Circuit Court of Appeals, which takes the position that an employee on the payroll for a given week is counted as an "employee" under Title VII for the entire week, regardless of the number of days actually worked during that week. *Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634–35 (1st Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984).[6] The Supreme Court has now decided to resolve this circuit-split.

▮ Wire & Cable argues, however, that we need not take sides in the dispute— although we actually have no choice, given that we are bound by Seventh Circuit precedent unless and until a subsequent decision by that court or the Supreme Court undermines its holding. Even if we were to utilize the more generous "payroll method," Wire & Cable maintains, it would still not fall under the ADA's definition of an employer. In support of its motion, Wire & Cable submits weekly payroll records for all of its employees during 1993–94. Based on these submissions the defendant contends that during 1993 there were no weeks during which it

---

**4.** This "25 or more employees" requirement operated from July 26, 1992 until July 25, 1994. 20 C.F.R. § 1630.2(c). After that time, an employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111(5)(A). Because the alleged discrimination took place before July 1994, the "25 or more employees" definition applies to the instant case.

**5.** The "current" calendar year under Title VII is the year in which the alleged discrimination occurred. *Norman v. Levy,* 756 F.Supp. 1060, 1062 n. 3 (N.D.Ill.1990). Because ADA regulations

indicate that the term "employer" is to be given the same meaning under the ADA as it is under Title VII, *see* 20 C.F.R. § 1630.2(c), and Title VII's definition is analogous to the ADA's, 42 U.S.C. § 2000e(b), we construe the "current" calendar year under the ADA in the same manner.

**6.** Although the Seventh Circuit in *Metropolitan,* 60 F.3d at 1229 n. 5, also considered the Fifth Circuit to have adopted this "payroll method" of counting employees in *Dumas v. Town of Mount Vernon,* 612 F.2d 974, 979 n. 7 (5th Cir.1980), at least one district court in that circuit has construed this portion of *Dumas* as dicta, *Goudeau v. Dental Health Servs., Inc.,* 901 F.Supp. 1139, 1143 (M.D.La.1995).

employed twenty-five or more employees, and that only seven such weeks existed in 1994. Therefore, the defendant contends, we do not have jurisdiction over Count I.

Villasenor responds with an affidavit, in which he claims to have knowledge of other employees at Wire & Cable who are not accounted for in the company's payroll records. Specifically, he contends that he trained two other employees, Jenaro Barajas and Emilio Carrillo, and that these individuals worked for Wire & Cable during 1993 and 1994. Villasenor Aff. ¶ 4. In addition, the plaintiff points to five other employees, including himself, who are not accounted for during certain weeks that they worked in 1993 and 1994. *Id.* ¶ 5. Finally, Villasenor claims to have personal knowledge of four sales employees and two payroll employees who are not listed in the defendant's payroll records, but who nonetheless worked in 1993 and 1994. *Id.* ¶¶ 6–7. However, he does not identify these persons by name, nor does he explain how he knows they performed work for the defendant. After considering all of these other employees, the plaintiff concludes that Wire & Cable employed the requisite number of employees for more than twenty weeks during 1994, and argues that jurisdiction is therefore proper.

We first address the propriety of counting Barajas and Carrillo for each and every week in 1993 and 1994. In its reply brief Wire & Cable admits that these two individuals worked for it during some weeks of 1993 and 1994,[7] but contends that they were not in its employ for the entire two-year period. In addition to the several weeks they were included in the payroll records, the defendant also admits that these two hourly employees worked other weeks during 1993, and sub-

mits "Form 1099's" for each of them. Defs.' Reply, Ex. B6. These "Form 1099's", the veracity of which the plaintiff has not challenged, along with Defendant Calabrese's affidavit of May 9, 1996, indicate that Jenaro Barajas worked for one week in June 1993 and four weeks in July 1993,[8] although this information was not included in Wire & Cable's original payroll records. However, adding Barajas to the number of employees for those weeks does not raise the total for any of the five weeks above the 25–employee threshold. Similarly, adding Carrillo to the number of employees for the sixteen weeks indicated on his 1993 Form 1099's fails to raise any of those totals above twenty-five.[9]

As for 1994, both Barajas and Carrillo were included in Wire & Cable's payroll for many of the work weeks, and thus have already been accounted for in the calculations.[10] The defendant contends that at no other times during 1994 did either of these two men work for the company, and the plaintiff has not submitted any evidence other than his affidavit to undermine this contention. Given that Villasenor does not introduce any affidavits from Barajas and Carrillo supporting his position, and the plaintiff himself only worked at Wire & Cable until April 1994, we have difficulty seeing how he can support his claim that these persons worked every week of 1994. Regardless, even if we were to include both of these individuals in every work week during 1994 for which they have not already been counted—an extremely generous reading of the evidence for Villasenor—the total number of 25–employee weeks would only rise to seventeen, a full three weeks shy of the ADA's requirement.[11] Therefore, we con-

---

7. Indeed, these two men were listed in Wire & Cable's payroll records, albeit not for all of the weeks that Villasenor claims they were working.

8. These are the weeks with pay periods ending between July 2, 1993 and July 30, 1993. Calabrese 5/9/96 Aff. ¶ 12, Ex. 6.

9. According to the affidavit and Form 1099's, the pay periods for these weeks ran from April 9, 1993 to July 30, 1993. Calabrese 5/9/96 Aff. ¶ 14, Ex. 6.

10. According to our review of Wire & Cable's records, Barajas was already counted in the pay

periods ending July 22, 1994 through September 23, 1994, and from October 7, 1994 through October 21, 1994. Carrillo was already included in the payroll for the pay periods from December 31, 1993 through May 1, 1994, and from November 11, 1994 through December 30, 1994.

11. Moreover, because a number of hourly employees did not work entire weeks during 1994, Calabrese 5/9/96 Aff. ¶¶ 6–10, Exs. 1–5, if the *Metropolitan* counting method is used then the pay periods ending on March 13, April 3, and April 10 drop out, and the total number of ADA-sufficient weeks would fall to fourteen.

clude that the evidence submitted regarding Barajas and Carrillo is insufficient to bring Wire & Cable within the purview of the ADA.

We next address the plaintiff's contention that five employees (including himself) are not included in the payroll for several weeks that they worked. At the outset, we observe that as for the four other employees—Ronald Walker, Ruben Conlon, Eddie York and Marvin Miller—Villasenor's affidavit does not summarize the factual basis for his belief that these individuals worked during the weeks in question. Thus, the use of this evidence to support his claim of jurisdiction is highly questionable. Moreover, the defendant contests the counting of these individuals in any weeks for which they are not listed in the payroll. Regarding Ronald Walker, Defendant Calabrese avers that this employee was in Florida from March 8, 1993 to April 9, 1993, and therefore his exclusion from the payroll during that period is justified and accurate. Calabrese 5/9/96 Aff. ¶ 15. Calabrese also maintains that Ruben Conlon was not included on the 1993 payroll for September 20–24 and October 18–22 because he did not work those weeks, id. ¶ 16, and indeed, this individual was terminated by Wire & Cable on October 22, 1993, an assertion that is corroborated by an Illinois Department of Employment Security Notice, id. ¶ 17, Ex. 7. Eddie York and the plaintiff are not counted for the week of December 27–31, 1993, contends Calabrese, because they were not at work during that time. Id. ¶¶ 18–19. Finally, Calabrese avers that Marvin Miller is not included in the payroll for the week ending on May 1, 1994 because he was terminated two days earlier, and was given his final paycheck the following week. Id. ¶ 20. All of these assertions are supported by the payroll documents submitted by the defendants in support of the instant motion. Plaintiff does not respond to this evidence, but merely makes the bald assertion that these people did work at Wire & Cable during those weeks. Because Villasenor has not persuasively challenged the defendant's evidence with affidavits or personnel records from these other employees, or explained the

factual basis for his claim of personal knowledge of these individuals' work schedule, we conclude that he has not proven that they were employees during the relevant weeks. *See Norman v. Levy,* 756 F.Supp. 1060, 1063 (N.D.Ill.1990) (counting individuals as employees only where defendant failed to produce any evidence to rebut plaintiff's affidavit). Therefore, we will not count them as employees for the weeks they are not included in Wire & Cable's payroll records.[12]

Finally, we address Villasenor's assertion that six additional employees—four in sales and two in payroll—worked for every one of the work weeks in 1993 and 1994. In his affidavit the plaintiff neither identifies these individuals by name nor indicates how he possesses personal knowledge of their employment activities. Although Villasenor's attorney baldly asserts in his response to the instant motion that these persons worked for Wire & Cable and fell under the management and control of the company, Pl.'s Resp. at 4, the plaintiff himself makes no representation to this effect in his affidavit. In contrast, Wire & Cable has proffered extensive business records detailing the payroll checks it made out to all of its employees during the two-year period at issue in order to support its claim that it did not employ six mystery persons in sales and payroll. Given this voluminous documentary evidence, and the complete absence of evidence to support the plaintiff contention, we find that none of these six persons was an "employee" under the ADA. *See Norman,* 756 F.Supp. at 1063 (rejecting plaintiff's assertion of employee status because "she fail[ed] to demonstrate any evidence to support a finding in her favor").

In sum, after considering all of the evidence submitted by the parties, and conducting the painstaking task of updating and correcting the defendant's initial calculations to include some of the persons mentioned above, we conclude that Villasenor has not satisfied his burden of demonstrating that Wire & Cable employed at least twenty-five persons for at least twenty weeks during

---

12. In any event, even were we to consider these persons employees for the disputed weeks, the number of 25–person weeks would still not exceed twenty.

either 1993 or 1994. At most, we count seventeen weeks in 1994 during which Wire & Cable employed at least twenty-five persons, and the total is even less if the Seventh Circuit's analysis in *Metropolitan* is used. As Wire & Cable was not an "employer" during either 1993 or 1994, there is no jurisdiction over Villasenor's ADA claim. Accordingly, we dismiss Count I for lack of subject matter jurisdiction. In addition, because we have disposed of the only federal claim and diversity of citizenship is not alleged, we relinquish our supplemental jurisdiction over the remaining state law claim in Count II. 28 U.S.C. § 1367(c)(3).

### IV. Conclusion

Congress presumably restricted the definition of the term "employer" in the ADA in order to protect small businesses from the burden of defending against discrimination lawsuits. *E.E.O.C. v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1281 (7th Cir.1995). Here, however, Wire & Cable obviously has the resources needed to investigate its business and payroll records, and retain able counsel to vigorously dispute the number of persons it employs. Thus, we question whether the provision was intended to protect entities like the defendant. Nonetheless, the statute is clear: companies such as Wire & Cable that do not employ the requisite number of employees cannot be considered "employers" under the ADA. Accordingly, for the reasons set forth above, the motion to dismiss Count I for lack of subject matter jurisdiction is granted, and we decline to exercise our supplemental jurisdiction over Count II. It is so ordered.