Jessica **VICKERY** and Jonathan
R. Vickery, Plaintiffs,

v.

**MINOOKA VOLUNTEER FIRE DEPARTMENT, Minooka Volunteer Fire Department Chief Dave Clark, individually and in his official capacity, and Board of Trustees of Minooka Fire Protection District, Defendants.**

No. 97 C 2877.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 15, 1997.

Janice A. Wegner, John P. Green, Lisa
Kane & Associates, Chicago, IL, Lisa R.
Kane, Chicago, IL, for plaintiffs.

Moira A. Dages, Virginia C. Leete, Donohue, Brown, Mathewson & Smyth, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, Jessica Vickery and Jonathan Vickery, brother and sister, brought suit against the defendants, Minooka Volunteer Fire Department (the "Department"), Department Chief Dave Clark, and the Board of Trustees of the Minooka Fire Protection District (the "Board"), alleging claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. The defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The defendants' motion is granted in part and denied in part.

### Background

The Minooka Fire Protection District (the "District") is a municipal corporation. Through its governing body, the Board, the District entered into an agreement with the Department to provide the residents of the District with fire protection and emergency ambulance service. The Department is a non-profit organization, fully run by volunteers. None of its firefighters/paramedics are compensated for their work for the Department.

The Department, in turn, entered into a contract with Kurtz Ambulance Service, Inc. ("Kurtz") to provide the District with emergency ambulance service (the "Contract"). The Contract specified that Kurtz would provide the Department with six full-time firefighters/ paramedics. In return, the Department paid Kurtz a lump sum of $ 192,138.96.

Ms. Vickery was hired by the Department as a volunteer firefighter/paramedic in 1995. Ms. Vickery was also a part-time paid employee of Kurtz until August, 1996. In July, 1996, she forwarded her resume to the Department for an open full-time paid position under the Contract, but was never offered an interview or considered for the position, while three male applicants were interviewed. Subsequently, on August 8, 1996, the defendants terminated Ms. Vickery as a volunteer.

Mr. Vickery was also a volunteer firefighter/paramedic with the Department. According to the complaint, during his tenure there, he opposed the Department's unlawful discrimination against Diane Abbott, another volunteer for the Department. As a result of his opposition, he alleges that the Department retaliated against him by placing him on probation in February, 1996. The Department fired him on August 7, 1996.

### Lack of Subject Matter Jurisdiction

On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the plaintiff has the burden of establishing that all jurisdictional requirements have been satisfied. *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). "Moreover, when the party moving for dismissal ... challenges the factual basis for jurisdiction, the nonmoving party ... must submit affidavits and other relevant evidence to resolve the factual dispute regarding the court's jurisdiction." *Id.*

Title VII applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). All individuals who have an employment relationship with an employer are "employees" of that employer. *Walters v. Metropolitan Educ. Enterprises, Inc.*, 519 U.S. 202, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997). Whether or not an employment relationship exists is determined by the payroll method. *Id.* The payroll method essentially asks whether or not an individual appeared on the employer's payroll for twenty or more calendar weeks in the current or preceding calendar year. *Id.*, 117 S.Ct. at 663.

In this case, the Board has at most seven employees. The Board is comprised of five members who receive an annual check of $800 and it employs a part-time fire marshall and a part-time secretary. Therefore, it does not fall within the statutory definition of an employer.

In addition, the Department does not have any employees. The Department hires firefighters/paramedics on a volunteer basis and does not compensate any of the individu-

als. Since there is no payroll, employment relationships do not exist between the firefighters/paramedics and the Department as defined by *Walters*.

■ Besides the Board's five members and its two part-time employees, the only other persons compensated are employees of Kurtz. The plaintiffs claim that these employees are employees of both the District and the Department, while the defendants claim that Kurtz and its employees are independent contractors. Since the District is not a party to this suit, I only address the plaintiffs' claims against the Department.

■ Independent contractors are not to be counted toward the fifteen employees required for Title VII jurisdiction. *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 437–38 (7th Cir.1996). To determine whether a person is an employee or an independent contractor, the court must look to five factors:

(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* at 438. The first factor is the most important in determining whether an individual is an employee or an independent contractor. *Id.*

The affidavits and supporting exhibits support plaintiffs' claim that the Department did, at least to some extent, control the activities of the Kurtz employees assigned to work for the Department. The Department outlined the daily, weekly, and monthly duties for the full-time firefighters/ paramedics. Thus, some of the Kurtz employees are arguably employees of the Department.

However, even if those Kurtz employees are employees of the Department, there is insufficient evidence to find that the Department has fifteen employees. Under the payroll method, the court must look to the number of Kurtz employees on its payroll who were assigned to the Department, and determine whether there were fifteen employees for twenty weeks in the current or preceding year. The plaintiffs have not presented any payroll records to show how many Kurtz employees were working at the Department for twenty weeks or more.

Using indirect evidence, I find that at most, Kurtz had seven employees. In the Contract, Kurtz agreed to provide the Department with six full-time firefighters/ paramedics. See Pl's. Resp. to Def.'s Mot. to Dismiss, Ex. 2 (Contract for Ambulance Service). Kurtz also provided the Department with a full-time secretary. Clark Aff. ¶ 7. Presumably, these seven employees were on Kurtz's payroll for twenty weeks.

Plaintiffs argue that seven other persons, who substituted for the full-time firefighters/paramedics, should also be counted as employees. To support this claim, plaintiffs offer Diane Abbott's affidavit that states that she copied, by hand, the entries of a logbook that reflect the days, times, and hours worked by all paid personnel.[1] *See* Ex. 2 (handwritten attachment). The logbook shows that the seven substitutes worked on certain days during 1997.[2] Although the substitutes worked for Kurtz sometime during 1997, the logbook does not indicate whether those substitutes were on Kurtz's payroll for twenty weeks. Therefore, I cannot include those seven substitutes as employees of Kurtz.

Because plaintiffs have failed to show that the Board and the Department are employers within the meaning of Title VII, the plaintiffs' claims under Count I and Count II must be dismissed for lack of subject matter jurisdiction.

---

1. Defendants' motion to strike Ms. Abbott's affidavit is denied although I reach the same conclusion without the affidavit.

2. Rich Arnold worked seventeen days in 1997; Ken Scholtes worked four days; Steve Kline worked three days; Bob McGee worked two days; and Steve Thompson, Ryan Roberts, and Bob Weber worked one day each.

*Failure to State a Claim*

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may not consider matters outside the pleadings. Thus, I will only consider the plaintiffs' first amended complaint and exclude all affidavits filed by both the plaintiffs and the defendants in determining this part of the motion.

A. *Count III: Jessica Vickery's Section 1983 Claim*

"A local governmental unit is subject to suit under 42 U.S.C. § 1983 because it is deemed a 'person' within the meaning of that provision." *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734 (7th Cir.1994). In this case, the Fire Protection District is a municipal corporation. 70 Ill.Comp.Stat. 705/1.[3] The Board governs and controls the affairs and business of the fire protection district: to provide fire protection services.[4] 70 Ill.Comp.Stat. 705/4.

There are three instances under Section 1983 in which a municipality may be held liable for violating the civil rights of a person: (1) there was an express policy that, when enforced, caused a constitutional violation; (2) there was a widespread practice that, although not expressly authorized, was so permanent and well settled as to constitute a custom or usage with the force of law; and (3) the alleged constitutional injury was caused by a person with final policymaking authority. *Baxter*, 26 F.3d at 734–35 (citations omitted). Ms. Vickery alleges that her complaint falls in the second and third categories.

Ms. Vickery first alleges that the Board and the Department had a hidden policy or practice of discriminating against women. The Board can be liable as the governing body of a municipal entity and the Department can be liable if the Board delegated authority to it. It is well settled that authority to make municipal policy "may be delegated by an official who possesses such authority." *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In this case, the Board contracted with the Department to provide fire protection services pursuant to its statutory authority. 70 Ill.Comp.Stat. 705/11a.

Although the Board and the Department can be liable, Ms. Vickery must allege sufficient facts to suggest that a hidden policy of sex discrimination exists. "Because a municipality can be held liable only for its regular procedures, not for the isolated independent tort of an individual employee, some fact indicating such procedures must appear in the complaint." *Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir.1985).

In Ms. Vickery's complaint, she alleges three separate incidents of sex discrimination. First, she claims that the Board and the Department refused to hire her as a paid employee because she was a woman and then terminated her position as a volunteer with the Department even though she had more fire calls than most men. Second, the Board and Department discriminated against Ms. Abbott by hiring a less qualified male applicant over her. Third, the Board and Department fired Ms. Vickery's brother in retaliation for protesting their acts of sex discrimination. Since the complaint does not cite just one isolated incident related to Ms. Vickery's employment, viewing the facts in the light most favorable to the plaintiff, she has arguably stated a sufficient claim for relief.

Even if the facts alleged were insufficient to prove an unexpressed policy or custom of sex discrimination, Ms. Vickery

---

**3.** More specifically, section 701/1 states:

It is hereby declared as a matter of legislative determination that in order to promote and protect the health, safety, welfare and convenience of the public, it is necessary in the public interest to provide for the creation of municipal corporations known as fire protection districts and to confer upon and vest in the fire protection districts all powers necessary or appropriate in order that they may engage in the acquisition, establishment, maintenance and operation of fire stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire therein; ... and that the powers herein conferred upon such fire protection districts are public objects and governmental functions in the public interest.

**4.** The plaintiffs have not named the District in this suit. However, since the plaintiffs have named the Board as a party, the Board as the District's governing body, acts in the name of the District.

has sufficiently alleged that her constitutional injury, her sex discrimination claim, was caused by an official with final policymaking authority. In her complaint, Ms. Vickery states that the Department is headed by Chief Clark, who is the final policymaker. Chief Clark, on behalf of the Department, interviewed three male applicants but did not offer Ms. Vickery an interview or consider her resume and application. She also alleges that Chief Clark terminated her from her position as a volunteer firefighter/paramedic. These allegations are sufficient to withstand a motion to dismiss.

### B.  Count IV:  Jonathan Vickery's Section 1983 Claim

To plead a cause of action under Section 1983, Mr. Vickery must allege that the defendants intentionally deprived him of a constitutionally-protected right in violation of the Constitution while acting under color of state law. *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988). Mr. Vickery claims that he had a constitutionally-protected right, under the Fourteenth Amendment's Equal Protection Clause, to be free from retaliation. The defendants violated his constitutional right to equal protection by intentionally retaliating against him because he opposed their unlawful sex discrimination practices.

Mr. Vickery's "right to be free from retaliation for protesting ... sex discrimination is a right created by Title VII, not the equal protection clause." *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Section 1983 provides a remedy for deprivation of constitutional rights but does not provide a remedy for violation of Title VII. *Id.*

Thus, the only way Mr. Vickery can maintain an equal protection claim is to allege that the defendants intentionally discriminated against him because of his membership in a particular class. *Id.* However, Mr. Vickery's complaint only alleges that he was fired in retaliation for his opposition to the defendants' discrimination of Ms. Abbott on the basis of her sex. These allegations only show retaliation on the basis of his conduct. They do not show that he was discriminated against because he is a member of a particular class.[5] Therefore, Mr. Vickery has failed to state a claim under Section 1983.

### Conclusion

For the foregoing reasons, the defendants' motion to dismiss the plaintiffs' Title VII claims in Count I and Count II, for lack of subject matter jurisdiction, is granted. The defendants' motion to dismiss Ms. Vickery's Section 1983 claim under Count III, for failure to state a claim, is denied. The defendants' motion to dismiss Mr. Vickery's Section 1983 claim under Count IV, for failure to state a claim, is granted.

---

5.  No court has recognized, as a class, employees who stand up for their constitutional rights.

*Gray,* 885 F.2d at 414.